UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENNETH H. BRATKOWSKI** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-0294 c/w 15-0900** |
| | **MLCF-SS** |
| **CAL DIVE INTERNATIONAL** | |

## ORDER

PLAINTIFF'S MOTION FOR SANCTIONS (Rec. doc. 132)

    **DENIED**

DEFENDANTS' MOTION TO QUASH AND FOR PROTECTIVE ORDER (Rec. doc. 139)

    **GRANTED**

The two motions are related. The plaintiff, Kenneth Bratkowski ("Bratkowski"), contends that the defendant, Cal Dive Offshore Contractors, Inc. ("Offshore Contractors"), intentionally withheld documents and only produced them on March 29, 2016.[1] He seeks sanctions. Rec. doc. 132. Bratkowski contends that because of the production of documents on March 29, 2016, he noticed the depositions of three persons who have been deposed and a fourth person who was not deposed. He contends that he needs a Rule 30(b)(6) deposition of Offshore Contractors and other discovery. Offshore Contractors and its insurer, Aspen Insurance UK, Ltd. ("Aspen"), moved to quash the depositions and for a protective order preventing further depositions. Rec. doc. 139.

The motion to quash was granted in part to provide time for the parties to brief the issues. The two motions were set for expedited consideration. Rec. doc. 145.

---

[1] The original defendant was Cal Dive International. Rec. doc. 1. On May 5, 2016, Bratkowski substituted Cal Dive Offshore Contractors, Inc. for Cal Dive International. Rec. doc. 156.

Background

The alleged accident occurred on August 6, 2012.  Offshore Contractors retained outside counsel, Ralph Kraft, in July 2013.  Bratkowski sued Offshore Contractors on January 30, 2015.  Rec. doc. 1.  On March 30, 2015, Offshore Contractors filed for bankruptcy under Chapter 11.  Rec. doc. 8.  On April 20, 2015, its motion for stay was granted.  Rec. doc. 22.

Bratkowski and Offshore Contractors entered into a stipulation.  Offshore Contractors was represented by its counsel in the bankruptcy proceeding in Delaware.  The parties agreed to lift the stay.  Part 3(c) provided:

> The Debtors will provide for inspection and copying those logs maintained in the ordinary course of business on the Cal Diver I on or about August 8, 2012, in Debtor's physical possession currently, and to the extent existent, will undertake good faith efforts to obtain physical possession of the requested logs, including but not limited to:
>
>   i. Master Dive Logbook
>  ii. Cal Diver I deck log
> iii. Cal Diver I SAT logs
>  iv. Cal Diver I decompression logs
>   v. Dive Bell Maintenance Logs
>  vi. Cal Diver I USCG Certificate of Inspection and Dive Bell Certification
> vii. Any and all records concerning modification history to the involved dive bell, inclusive of any records from any third party contractor.

Rec. doc. 26 (Exhibit A).  On June 23, 2015, Mr. Kraft produced documents to Bratkowski.  Rec. doc. 132 (Memorandum at 5).

On September 1, 2015, Bratkowski moved to lift the stay.  Rec. doc. 26.  It was granted on September 2, 2015.  Rec. doc. 27.  On September 3, 2016, Offshore Contractors moved to substitute Charles Mouton, its current counsel, for Mr. Kraft.  Rec. doc. 29.  The order was granted.  Rec. doc. 30.

On September 25, 2015, Bratkowski served Offshore Contractors with a request for production of documents.  Rec. doc. 132 (Exhibit 3).  On November 4, 2015, Offshore Contractors

2

served responses.  Rec. doc. 132 (Exhibit 4).  The requests and responses for RFP nos. 5 and 13 are:

> Request for production no. 5.
>
> True copies of each and every maintenance record and/or modification record, requested or performed prior to the accident, pertaining to the dive bell herein for 10 years.
>
> Response.
>
> All records concerning the Cal Diver 1 Bell, including records regarding work performed at Arc Controls, Inc. are attached.
>
> Request for production no. 13.
>
> True copy of the Certificate of Inspection for the M/V Cal Diver I at the time the incident occurred and any vessel documentation pertaining to the dive bell as well.
>
> Response.
>
> See attached Certificate of Inspection.

Rec. doc. 132 (Exhibit 4 at 2, 3 and 6).

On March 29, 2016, International served its seventh supplemental and amending response to the initial request for production of documents.  The response was limited to RFP No. 13 and is as follows:

> A. See attached Certificate of Inspection; (Previously Submitted);
> B. CDS-89  ABS Approved documents (Bates 1094-1359);
> C. Miscellaneous Sat System documents (Bates 1360-1420); and
> D. "Sat System 2" documents (Bates 1421-1499).

Rec. doc. 132 (Exhibit 6).

## Production of the Documents

Bratkowski contends that Offshore Contractors intentionally withheld production of crucial documents that it agreed to produce in the stipulation associated with the motion to lift the

3

bankruptcy stay. He urges that in June 2015 Offshore Contractors did not send any documents concerning the modification history of the dive bell and in November 2015, it did not produce any vessel documentation records in response to his request for production of documents. Thereafter it did not supplement its discovery responses.

Bratkowski contends that the April 11, 2016 deposition of Offshore Contractors' health and safety manager, Terry Overland, demonstrates that the documents were located and shipped to Mr. Kraft prior to the change in counsel for Offshore Contractors. Bratkowski suggests that Mr. Kraft chose to withhold the documents.

Bratkowski served an interrogatory on Offshore Contractors requesting an explanation for the March 29, 2016 production. Offshore Contractors responded:

> Upon information and belief, the binder of records were in the possession of Cal Dive until approximately August 2015 when they were delivered to the office of Cal Dive's previous counsel. In early September 2015, the documents were delivered to undersigned counsel. At some point before discovery responses were due, the documents were inadvertently placed in a box containing other documents, unrelated to the dive bell in question, and were never copied or stored electronically. The binder was found by a paralegal on March 28, 2016, and counsel for Cal Dive was made aware of their existence on March 29, 2016. The documents were scanned and sent via email to counsel for the plaintiff on March 29, 2016.

Rec. doc. 150 (Exhibit 3). Offshore Contractors adds that: (1) in accord with the bankruptcy stipulation, Mr. Kraft produced records that were available to Offshore Contractors as of June 2015; (2) after June 23, 2015, additional records were obtained from Offshore Contractors' Port Arthur facility where the Cal Diver I was "cold stacked" since October 2013; (3) the records were located by Terry Overland, as he testified in his deposition, and turned over to Mr. Kraft; (4) all records were transferred to Offshore Contractors' current counsel; (5) once it was determined these documents did not contain any reference to modifications to the bell, they were inadvertently placed in a box with documents unrelated to the bell until they were discovered by a paralegal on

March 28, 2016; and (6) although not responsive to the discovery requests or the bankruptcy stipulation, they were produced out of an abundance of caution.

Offshore Contractors' explanation for the delay in the production of the documents is accepted. Among the factors weighing in favor of the acceptance of the explanation are the bankruptcy of Offshore Contractors with the attendant upheaval of its operations and attempts to sell equipment and the change in counsel in this matter in September 2015. The most important factor, however, is that if Offshore Contractors had intentionally withheld the documents in June 2015 with the bankruptcy production and again in November 2015 with the responses to Bratkowski's written discovery, it would not have produced them in March 2016.

<div style="text-align:center">Documents</div>

Bratkowski attached two drawings from the documents produced on March 16, 2016. They are dated August 9, 1984. Rec. doc. 132 (Exhibit 7). He refers to the documents as presenting the modification history of the bell from its design and construction in 1977 through 1984. He reports that the records suggest that the spring assist for the hatch was removed between 1984 and possibly 1992. Rec. doc. 132 (Memorandum at 7).

Offshore Contractors confirms that the records are dated 1992 or earlier. Rec. doc. 150 at 5-6. It contends that the documents were apparently created as part of what appears to be an ABS certification process in 1984 by a prior owner of the diving bell. Rec. doc. 159 at 7.

Bratkowski's requests for production of documents, including RFP nos. 5, 6, 14 and 16 seek records pertaining to the bell for ten years prior to the accident. The requests were served on September 25, 2015. They sought records from 2002. All of the records produced on March 16, 2016 predate the response time period by ten years. The documents produced on March 16, 2016 are not responsive to RFP nos. 5, 6, 14 and 16.

Offshore Contractors suggests the documents were prepared in 1984 as part of an ABS certification process. It produced the documents as its seventh supplemental and amending response to initial request for production of documents. That pleading describes the documents as responsive to RFP no. 13 which sought "any vessel documentation pertaining to the dive bell. . . ." Rec. doc. 132 (Exhibit 6). The March 29, 2016 documents are responsive to that discovery request. Rec. doc. 132 (Exhibit 4).

The pertinent part of the bankruptcy stipulation referred to:

> Any and all records concerning <u>modification</u> history to the involved dive bell, inclusive of any records from any third party contractor.

Rec. doc. 26 (Exhibit A) (emphasis added). The stipulation is not limited to the ten years preceding the accident. It refers to any and all records concerning modifications by Offshore Contractors, including any records by any third party contractor for Offshore Contractors. Alternatively, it refers to any modification of the bell at any time whether or not performed by Offshore Contractors or by a contractor for Offshore Contractors.

Offshore Contractors states not once but several times that the records produced on March 16, 2016 do not contain any reference to any of modification of the diving bell. See for example:

> Contrary to plaintiff's assertion, the documents contain no reference whatsoever to any modifications of the diving bell hatch in question.

Rec. doc. 150 at 2; and see also Id. at 3, 4 and 5.

Bratkowski states that the March 29, 2016 documents contain drawings which reveal that when the diving bell was originally designed and constructed by Perry Submariners, there was a spring assist for the hatch. Rec. doc. 132 (Memorandum at 7). This is not disputed by Offshore Contractors. It did not acquire the bell until after 1992 at which time there was no spring assist on the bell. Rec. doc. 150 at 2. Offshore Contractors reports that when it acquired the bell and during

its ownership of the bell there was a double-hinge design that was used by divers throughout Offshore Contractors' ownership of the bell. Rec. doc. 150 at 3.

In summary:

1. In 1977, the bell was manufactured by Perry Submariners.

2. It was designed and constructed with a spring-assist mechanism on the hatch.

3. In 1992, the bell was owned by Offshore Petroleum Divers. Prior thereto it may have been owned by Taylor Diving and Professional Divers of New Orleans.

4. After 1992, it was acquired by Offshore Contractors. At the time of its acquisition, the bell did not have a spring-assist mechanism on the hatch. Instead there was a double-hinge.

5. In 2009, the bell was refurbished by Arc Controls at the request of Offshore Contractors.

The March 29, 2016 records do not contain any information concerning modifications to the diving bell by Offshore Contractors or any contractor employed by Offshore Contractors. Indeed, the records predate Offshore Contractors' acquisition of the bell. The records are not responsive to the bankruptcy stipulation.

Even if the stipulation refers to records of any modification of the bell at any time, including modifications before Offshore Contractors acquired the bell, the March 29, 2016 records are not responsive to the bankruptcy stipulation. These records do not reveal who removed the spring-assist mechanism and when it was done. Offshore Contractors was not required to produce them in response to the bankruptcy stipulation.

Motions

Bratkowski's motion for sanctions is premised on: (1) the contention that the documents produced on March 29, 2016 are responsive to the bankruptcy stipulation and the request for production of documents; and (2) they were intentionally withheld. The documents are not

responsive to the bankruptcy stipulation, but they are responsive to RFP no. 13 in Bratkowski's request for production of documents. For the reasons previously stated, Offshore Contractors' explanation for the failure to produce the documents in November 2015 is accepted. Bratkowski's motion for sanctions will be denied.

Bratkowski contends that he requires the following discovery:

1. Retake the depositions of William Marrs, Andre Boudreaux and Joe Amoe, formerly of Offshore Contractors, because they were the individuals most responsible for maintaining the dive bell. They were deposed prior to the March 29, 2016 production.

2. Depose Steve Brazda a former VP of operations for Offshore Contractors concerning the modification history of the dive bell.

3. Rule 30(b)(6) deposition of Offshore Contractors concerning the March 29, 2016 production and the subject matter contained in the documents. If it cannot produce a representative with such knowledge, it should be required to identify the persons with such knowledge so Bratkowski can subpoena them.

4. A Coast Guard expert – Bratkowski contends that he should be permitted to submit a report from a David Cole, a Coast Guard expert.[2]

5. Re-inspection of the dive bell.

6. Depose Engineers with Perry Submariners. Bratkowski is seeking to identify engineers employed by Perry Submariners who can testify about the design and construction of the diving bell. He urges that the March 29, 2016 documents may aid him in locating these engineers.

---

[2] The issue of whether Bratkowski will be able to present a report after the deadline is not before the undersigned. That would come before the District Judge.

Pursuant to Fed. R. Civ. P. 30(a)(2)(A)(i), a party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b), if the parties have not stipulated to the deposition and it would result in more than ten depositions being taken or the deponent has already been deposed. Bratkowski has taken more than ten depositions. Defendants object to further depositions. Among the considerations described in Rule 26(b)(1) are "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Bratkowski argues that it is unjust to permit Offshore Contractors to produce the documents at a late stage and deny him the opportunity to conduct discovery regarding the documents. Offshore Contractors responds that: (1) the testimony indicates that the hatch was in the same configuration at the time of its acquisition by Offshore Contractors as it was at the time of the accident; (2) the report of Bratkowski's expert recommended the installation of a spring-assist system for the hatch; (3) Bratkowski questioned witnesses concerning a spring-assisted design for the hatch; (4) the former Offshore Contractors witnesses Bratkowski seeks to depose only became involved with the bell after it was acquired by Offshore Contractors; and (5) a Rule 30(b)(6) deposition is not available because Offshore Contractors "closed its doors" and there is no employee to be designated as a corporate representative.

Although documents response to RFP no. 13 were not produced until March 29, 2016, Bratkowski was aware of the spring-assist design as an alternative to the double hinge on the hatch at the time of the accident. He questioned one Offshore Contractors representative on the March 29, 2016 documents. These factors weight against the request for further discovery. It is undisputed that the March 29, 2016 records predate Offshore Contractors' acquisition of the dive bell in 1992. There is no evidence that there was a spring assist mechanism on the hatch of the

9

dive bell at the time that Offshore Contractors acquired it. Bratkowski has not demonstrated prejudice.

The most important factor, however, is the trial schedule. The discovery deadline was May 5, 2016. The District Judge noted that there are thirteen motions pending before him. He set motions for summary judgment for consideration on May 18, 2016. Motions in limine are set for the morning of the trial on June 20, 2016. Rec. doc. 154. The pretrial schedule does not permit further discovery.

IT IS ORDERED that: (1) Bratkowski's motion for sanctions (Rec. doc. 132) is DENIED; and (2) defendants' motion to quash and for protective order (Rec. doc. 139) is GRANTED.

New Orleans, Louisiana, this  9th  day of May, 2016.

_____
**SALLY SHUSHAN**
**U.S. Magistrate Judge**