UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


KENNETH H. BRATKOWSKI                          CIVIL ACTION


v.                                             NO. 15-294

                                               c/w 15-900[1]


ASPEN INSURANCE UK, LTD.                        SECTION "F"


ORDER AND REASONS

        Before the Court are five motions: (1) Cal Dive International,
Inc.'s (now Cal Dive Offshore Contractors, Inc.'s) motion for
partial summary judgment; (2) Aspen Insurance UK, Ltd.'s motion
for partial summary judgment; (3) the plaintiff's motion for
summary judgment on the issue of causation; (4) the plaintiff's
motion for summary judgment on the issue of total and permanent
disability; and (5) Aspen Insurance U.K., Ltd.'s motion to strike
the prayer for relief paragraph of the second amending complaint.
For the reasons that follow, the defendants' motions are GRANTED,
and the plaintiff's motions are DENIED.

_____

[1] This Order applies to both cases.

1

**Background**

This consolidated litigation arises out of personal injuries allegedly sustained by a Jones Act seaman diver.

Kenneth H. Bratkowski was employed as a diver by Cal Dive International, Inc. and assigned to the DSV CAL DIVER I, which was owned and operated by Cal Dive International, Inc.  On August 6, 2012, Mr. Bratkowski was on a routine dive to re-route Allison Pipeline.  He and his dive partner, Dan Jackson, were returning to the work area in a two-man Diving Bell, which was lowered to the seabed by the winch system on the DSV CAL DIVER I.  Once at the required depth, the pressure in the bell was equalized, and Mr. Bratkowski prepared to begin the dive.  To exit the bell, Mr. Bratkowski was required to lift the lower hatch cover in the dive bell.  Mr. Bratkowski bent over to reach down and grab the handle of the hatch cover; as he began to lift it upwards, he says he felt a twinge and heard a pop from his back.  He completed the lift with Mr. Jackson's help and, as they latched the hatch cover in place, Mr. Bratkowski then felt a pain in his lower back.  As a result of the accident, Mr. Bratkowski, who was then 39 years old, alleges that he suffered a severe spinal injury causing him to be permanently and totally disabled.

On January 30, 2015, Mr. Bratkowski sued Cal Dive International, Inc., seeking to recover under the Jones Act for

negligence, as well as under general maritime law for Cal Dive's unseaworthy vessel, and, finally, for maintenance and cure.  In the personal injury case, Civil Action Number 15-294, Mr. Bratkowski seeks $15,000,000 in damages due to the severity of his injuries.  In particular, he claims that he is required to lie down every hour for approximately 15 minutes to relieve pain; he has lost full function of his right leg; he must stay medicated to help alleviate his pain; he experiences constant tingling in his foot and radiating pain through the entirety of his leg if his foot is touched.

On March 16, 2015, Cal Dive filed a Notice of Filing Bankruptcy, notifying the Court and the plaintiff that it had filed on March 3, 2015, pursuant to Chapter 11, a voluntary petition for bankruptcy in the District of Delaware.  A few weeks later, Mr. Bratkowski sued Aspen Insurance UK Ltd., Cal Dive's insurer, alleging the same claims arising from the same August 6, 2012 incident.  Bratkowski filed an amended complaint on April 14, 2015, in which he added more particular allegations concerning Cal Dive's failure to provide maintenance and cure in Louisiana.  Meanwhile, in the bankruptcy proceeding in Delaware, Mr. Bratkowski filed a motion to lift the stay of proceedings pursuant to 11 U.S.C. § 362(d).  From this Court, Cal Dive requested an order staying Bratkowski's lawsuit against it in light of the bankruptcy proceeding pending in Delaware; the stay was granted, but the case

has since been restored to this Court's active docket upon the plaintiff's motion.

On May 28, 2015, Aspen Insurance requested summary judgment dismissing the plaintiff's complaint against it in Civil Action Number 15-900.  On June 17, 2015, the Court granted in part and denied in part the motion; the plaintiff's Jones Act, unseaworthiness, and maintenance and cure claims as alleged against Aspen were dismissed, but Bratkowski's failure-to-pay maintenance and cure claim survived Aspen's prior motion for summary judgment.

Cal Dive and Aspen now seek summary relief dismissing the plaintiff's claims for punitive damages on the ground that punitive damages are not available to him on his Jones Act negligence and unseaworthiness claims because controlling law precludes a seaman from claiming such damages from his Jones Act employer; and dismissing Bratkowski's claims for punitive damages, compensatory damages, or attorney's fees associated with the non-payment of maintenance and cure benefits on the ground that Bratkowski cannot prove that Cal Dive failed to pay or timely pay maintenance and cure because of a callous indifference to his rights or an arbitrary, willful, or wanton  disregard of his rights.  And the plaintiff seeks summary relief on the issues of medical causation and total and permanent disability.  Meanwhile, the magistrate

4

judge recently granted the plaintiff leave to amend his complaint to substitute Cal Dive Offshore Contractors, Inc. for Cal Dive International Inc. in light of evidence that Contractors and not International is the true employer and vessel owner and operator. Taking issue with the prayer for relief section in the second amended complaint, Aspen now requests that the Court strike a portion of the complaint insofar as it might be read to revive claims dismissed by this Court.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is

appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory

6

facts." <u>Antoine v. First Student, Inc.</u>, 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

## II.

The plaintiff seeks judgment as a matter of law that: (A) his severe spinal injuries and present condition were caused by his lifting the hatch on the dive bell aboard the CAL DIVER I on August 6, 2012; and (B) he is permanently and totally disabled as a result of lifting the hatch on the dive bell aboard the CAL DIVER I on August 6, 2012.  In support of his motions for summary judgment on these two issues, Mr. Bratkowski submits his treating physician's deposition testimony as well as a March 28, 2016 letter from his treating physician, Dr. Eiserloh.  The defendants oppose summary judgment, contending that: the unsworn, unauthenticated letter is incompetent summary judgment evidence, constitutes hearsay, and should be disregarded; that the plaintiff fails to carry his burden to prove entitlement to judgment as a matter of law; and that genuine disputes as to material facts preclude summary judgment on these issues.

As a threshold matter, the Court considers whether the March 28, 2016 letter that Dr. Eiserloh sent to plaintiff's counsel is competent summary judgment evidence.[2]  Cal Dive submits that the

---

[2] The letter states:

letter, which is unsworn and hearsay, should be disregarded.  The plaintiff counters that the letter should be considered on summary judgment "because it was attached as an exhibit in Dr. Eiserloh's deposition."  However, the plaintiff contends that, even if the Court disregards the conclusions in the letter, Dr. Eiserloh's statements in his deposition nevertheless support his motions for summary judgment.  Because the plaintiff fails even to suggest how an unsworn letter directed to plaintiff's counsel that is offered for the truth of the matters asserted could be presented in a form that would be admissible in evidence, the Court will disregard the letter.[3]

A.   Medical Causation

The plaintiff submits that he is entitled to judgment as a matter of law that his spinal injury and current condition was caused by his lifting of the hatch on the dive bell on August 6,

---

[Mr. Bratkowski] reported at my initial evaluation that he injured his back when he was lifting a hatch.... I am certain that Mr. Bratknowski injured his back when he lifted the hatch in the dive bell and sustained a pop in his back with a 'strange feeling' in his low back and into his right leg.... Mr. Bratkowski's lumbar injury and subsequent surgeries and current impairment are more likely than not related to the lifting of the hatch in the dive bell than any other event.

[3] Presumably, the plaintiff will offer Dr. Eiserloh as a witness at trial, but the Court need not speculate.  It is up to counsel to comply with summary judgment procedure.  See Fed. R. Civ. P. 56(c)(2).

2012.   To support his motion, the plaintiff submits deposition testimony by his treating physician, Dr. Eiserloh, who testified that Mr. Bratkowski's lifting of the hatch on either August 6 or August 8 is the cause of his current condition.   The plaintiff underscores that Dr. Eiserloh is the only physician providing an opinion on causation such that there are no contested issues concerning medical causation.   Cal Dive counters that Dr. Eiserloh's opinion, which is based on Mr. Bratkowski's statements to him, is insufficient to warrant summary judgment on causation.[4] Cal Dive also submits that the issue of causation should be left to the jury because a genuine dispute as to the material fact of causation is created by Mr. Bratkowski's prior statements and the strenuous activities he concedes he performed from August 1 through August 8.

Cal Dive has identified specific facts that establish a genuine issue for trial on the issue of causation.   Cal Dive points to evidence in the record in which Jarrard Broussard testified that when the plaintiff reported his injury to him, he speculated that maybe his pain was caused by his sleeping position, or using the impact wrench the day before, or due to "old age."   Mr. Broussard testified that when Mr. Bratkowski discussed his injury

---

[4] Cal Dive submits that Dr. Eiserloh's conclusion as to causation is based on Mr. Bratkowski's self-reported history to Dr. Eiserloh and, thus, it depends on the accuracy and completeness of Mr. Bratkowski's statements to his doctor.

when he was leaving the boat on August 16, 2012, "[t]he hatch never came up." Cal Dive points out that Mr. Bratkowski testified during his deposition that he felt pain when he lifted the hatch on August 6 and on August 8. Cal Dive points out that, after Mr. Bratkowski lifted the hatch on August 6, he proceeded to perform a number of tasks over a number of hours without complaint on August 6 , 7, and 8, some of them strenuous, including jetting to uncover a pipeline, moving scrap, impacting, lifting the hatch, derigging the crane, and placing concrete and sand bags. Finally, Cal Dive points to its commercial diving expert, who has opined that any number of the tasks performed by the plaintiff, if performed incorrectly, could have contributed to or caused injury. The plaintiff suggests that the evidence submitted by Cal Dive "without a medical expert opinion, offer absolutely nothing more than speculative and conjectural evidence on the issue of medical causation." The Court disagrees.

The plaintiff insists (wrongly) that Cal Dive cannot defeat summary judgment on the issue of causation without offering its own medical expert. The case literature invoked by the plaintiff to support his argument that expert testimony is required to establish causation concerns distinguishable factual circumstances in which "the question of medical causation is complex and not within the knowledge of an ordinary lay person." See Anh Ngoc Vo v. Chevron U.S.A., Inc., No. 12-1341, 2014 WL 3401095, at *2 (E.D.

La. July 11, 2014)(citations omitted)("No medical doctor who has examined Vo has concluded that his neurological conditions were caused by trauma in the allision;" rather, a neurologist and a neurosurgeon opined that Vo's condition was incidental to his congenital Chiari Malformation); see also Seaman v. Seacor Marine LLC, 326 Fed.Appx. 721, 723 (5th Cir. 2009)(In a toxic tort suit, the plaintiff "cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation."). Not so, here. The plaintiff's theory of medical causation is not so complex as to be outside the knowledge of lay factfinders. The record indicates that Mr. Bratkowski told his doctor that he injured his back lifting the hatch; consistent with the plaintiff's statements to his doctor, his doctor has concluded that it is likely that, as the plaintiff told him, the plaintiff injured his back lifting the hatch. Cal Dive's failure to engage a medical expert to opine on medical causation does not, standing alone, entitle the plaintiff to judgment as a matter of law.

The Court cannot rule as a matter of law that the plaintiff's spinal injuries were caused by his lifting the bell hatch on August 6, 2012 based solely on Dr. Eiserloh's testimony any more than it could rule as a matter of law that the plaintiff proved causation based on his own theory of causation. Under the circumstances and considering the factual controversies of record, crediting the plaintiff's theory of causation (as conveyed to his treating

physician) to the exclusion of other theories arguably supported by record evidence -- including testimony by other witnesses, as well as the plaintiff's own deposition testimony and timeline and substance of reporting his injury -- is inappropriate.  <u>Cf.</u> <u>Viterbo v. Dow Chemical Co.</u>, 826 F.2d 420, 424 (5th Cir. 1987)("Dr. Johnson's testimony is no more than Viterbo's testimony dressed up and sanctified as the opinion of an expert.  Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.").

     B.   Permanent and Total Disability

     The plaintiff seeks judgment as a matter of law that Mr. Bratkowski is permanently and totally disabled as a result of lifting the bell hatch.  Mr. Bratkowski points to Dr. Eiserloh's testimony that it is his medical opinion that Mr. Bratkowski is permanently and totally disabled from a work standpoint based upon his pain levels and weakness in his leg.  Cal Dive counters that there remain genuine disputes concerning the extent or permanence of Mr. Bratkowski's disability.  Because the record indicates that the plaintiff has not yet reached maximum medical improvement, summary judgment is premature.

     Dr. Eiserloh testified on April 1, 2016 that he does not believe that Mr. Bratkowski is a candidate for any work due to the pain that he is experiencing and the weakness in his leg.  When

asked if Mr. Bratkowski's pain could be reduced, perhaps by being treated at a pain management clinic with a stimulator, whether Mr. Bratkowski could be a candidate for work, Dr. Eiserloh stated:

> I think that you'd have to significantly reduce that pain. I don't think it's likely, but I think that you'd have to come up with some way to do that, and the only way would be, you know, if the stimulator is successful. And that's a hypothetical, but I'd have to reassess at that point.... I think it would be highly unlikely at this stage that he could ever get back to work, but I think it may help him with some of his comfort. The sedentary aspect of it is really he cannot sit still, you know, because that leg just gets more and more painful. So I guess if you could reduce that with a stimulator, it may be helpful, but I still think it's highly unlikely because of the amount of time this has gone on. This is a permanent injury with a nerve.

As he contended in support of his motion for summary judgment on causation, the plaintiff underscores that Dr. Eiserloh is the only physician who has rendered an opinion concerting Mr. Bratkowski's disability status and, therefore, judgment as a matter of law is appropriate. Cal Dive concedes that Dr. Eiserloh is qualified to testify as to the plaintiff's medical condition and treatment, but notes that he is not a job placement or vocational rehabilitation expert. Cal Dive also suggests that the plaintiff's condition is still in flux, making summary judgment for him inappropriate. The Court agrees.

Notably, Mr. Bratkowski has not reached maximum medical improvement.[5] Dr. Eiserloh testified that the earliest he would fully assess the fusion would be May 2016; he went on to testify that he "probably wouldn't do a CT scan on him to check that until probably 18 months from the date of the fusion surgery," in another six months.[6] Summary judgment on the issue of the permanency and extent of Mr. Bratkowski's disability is patently premature.

III.

A.   Punitive Damages Are Non-Pecuniary Damages Unavailable Under the Jones Act and the General Maritime Law.

Cal Dive seeks partial judgment as a matter of law that the plaintiff may not recover punitive damages where, as here, a seaman alleges Jones Act negligence and unseaworthiness under general maritime law. The plaintiff counters that a fact issue exists as to whether one of the Cal Dive entities is a third-party non-employer and vessel owner; if so, the plaintiff submits that he may be able to recover punitive damages against such a third-party non-employer, citing a ruling by another Section of this Court.

---

[5] Dr. Eiserloh testified that "[t]here's still some time before I would declare him at MMI."
[6] And, although skeptical that the plaintiff's pain could be reduced significantly by use of a stimulator at a pain management clinic, Dr. Eiserloh testified that, if the stimulator were successful in reducing the plaintiff's pain, he would need to reassess whether he believed he could engage in any work.

Because the record indicates that the proper Cal Dive defendant that was recently substituted is both Jones Act employer and vessel owner, Cal Dive is indisputably entitled to judgment as a matter of law dismissing any punitive damages claims asserted by the plaintiff in connection with his Jones Act and unseaworthiness claims.

Relying on *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990), the Fifth Circuit, sitting *en banc*, has instructed that "the Jones Act limits a seaman's recovery to pecuniary losses where liability is predicated on the Jones Act or unseaworthiness." *McBride v. Estis Well Service, L.L.C.*, 768 F.3d 382 (5th Cir. 2014)(*en banc*), *cert. denied*, 135 S.Ct. 2310 (2015). Because punitive damages are non-pecuniary losses, they are not recoverable under the Jones Act or general maritime law. *Id.*

Under no set of facts, Cal Dive submits, can the plaintiff recover punitive damages in connection with his Jones Act negligence and unseaworthiness claims in light of *McBride*. The Court again agrees. The magistrate judge recently allowed the plaintiff to amend his complaint to substitute Cal Dive Offshore Contractors, Inc. for Cal Dive International Inc. This substitution has no impact on Cal Dive's motion for partial summary judgment insofar as it seeks to dismiss the plaintiff's claim for punitive damages under the Jones Act or general maritime law.

There is no dispute that the Cal Dive entity that has now been substituted as defendant was Mr. Bratkowski's Jones Act employer as well as the CAL DIVE I's owner and operator. Where, as here, a seaman seeks to recover for Jones Act negligence and unseaworthiness, he is limited to recovery of pecuniary losses; any attempt to recover punitive damages is foreclosed by McBride.

> B.   Punitive Damages Are Available for Willful (But Not Merely Negligent) Failure to Pay or Render Timely Cure.

Cal Dive and Aspen submit that Mr. Bratkowski cannot prove that Cal Dive willfully failed to pay or timely pay maintenance and cure, which precludes him from recovering punitive damages, compensatory damages, or attorney's fees associated with the non-payment of maintenance and cure benefits. The plaintiff counters that he "limits his claim for punitive damages due to Defendant's failure to provide immediate and timely cure to Mr. Bratkowski following his accident herein for what constitutes a very serious spinal injury." In other words, the plaintiff submits that Cal Dive should have treated him for decompression sickness for three days, not five; that the delay in treatment caused permanent nerve damage, which has led to his permanent and total disability; that the defendant's violation of Coast Guard regulations "directly impacted" his timely exit of saturation, thereby delaying treatment for his back injury; and that the plaintiff could have

been brought to the Fourchon dock on August 13, instead of August 16, to begin receiving treatment for his spinal injury. This timeline, the plaintiff submits, shows that the defendant's "overwhelming desire to make money by accepting new jobs outweighed its obligation to obtain timely and proper treatment for Mr. Bratkowski's serious and now permanent spinal injury."

It is settled that an injured seaman may recover punitive damages for his employer's willful failure to pay maintenance and cure. Atl. Sounding Co., Inc. v. Townsend, 557 U.S. 404 (2009)(noting that "[p]unitive damages have long been an available remedy at common law for wanton, willful, or outrageous conduct."). The key to recovering compensatory damages, punitive damages, and attorney's fees associated with a willful failure to pay maintenance and cure is that the plaintiff must prove that the defendant acted arbitrarily, wantonly, or outrageously.

Cal Dive and Aspen submit this narrative, supported by the summary judgment record: When the plaintiff reported pain for the first time to his supervisors, he was in saturation on the CAL DIVER I. Cal Dive contacted the shore-based medical advisor and treatment was directed by Dr. Joseph Serio. (When there is any question as to whether a diver may have suffered decompression sickness (DCS), it is imperative that DCS protocol be followed.) The plaintiff could not be released from the CAL DIVER I until the

17

DCS protocol was completed in full; this included the mandatory "bends watch," which requires a person that has been treated for decompression sickness to remain in close proximity to a hyperbaric chamber such as the one aboard the CAL DIVER I for a total of 30 hours after reaching the surface. From the time the DCS protocol was instituted (August 9, 2012 at 22:25 hours), it corresponded with appropriate dive tables and desaturation protocols directed by Dr. Serio such that the plaintiff reached surface on August 15, 2012 at 7:28 hours. At that time, the plaintiff was placed on 6-hour and then a 24-hour bends observation, from August 15 until August 16 at 13:28 hours, with the CAL DIVER I reaching the dock on August 16 at 18:25 hours. The plaintiff left the vessel and was seen in Dr. Serio's office the following morning on August 17, 2012. Cal Dive instituted maintenance and cure benefits to the plaintiff following the incident and has paid maintenance at a rate of $128.70 per day. Cal Dive has voluntarily paid supplemental advances on lost wages of $3,578 bi-weekly to the plaintiff, totaling $262,179.26. Cal Dive briefly stopped paying maintenance benefits when his physician advised that he had reached maximum medical improvement, but when additional medical treatment was suggested, maintenance benefits were reinstituted by Cal Dive in June 2015 retroactive to the day they were suspended in March. Dr. Eiserloh performed additional surgery on the plaintiff in 2015, which was authorized and paid for by Cal Dive. All medical bills

submitted by Mr. Bratkowski to Cal Dive have been paid under Cal Dive's cure obligation.   Mr. Bratkowski continues to receive maintenance benefits, and is unaware of any medical bills that have not been paid.   Finally, and notably, the plaintiff's own treating physician contradicts plaintiff and has stated that any delay in treatment for the plaintiff's back injury resulting from the DCS protocol would not have altered his treatment: Dr. Eiserloh testified that he would not have recommended emergency surgery, but would have instituted conservative care before resorting to surgery.

For his part, Mr. Bratkowski presents nothing that would support a finding that Cal Dive acted arbitrarily and capriciously, or that it "exhibited callousness and indifference" to his plight. Indeed, there is no dispute that Cal Dive followed DCS protocol directed by Dr. Serio.[7]   There is nothing in the summary judgment record that would support a finding of callousness or willfulness and, therefore, summary judgment in favor of Cal Dive and Aspen is

---

[7] Mr. Bratkowski submits that, according to his expert, the delay in treatment due to the DCS protocol followed by Cal Dive as directed by Dr. Serio was "grossly negligent and completely unacceptable medical protocol."   Even assuming that this expert testimony is admissible, it fails to inform an inquiry into willful or arbitrary conduct on the part of Cal Dive.   Negligence or "unacceptable medical protocol" falls well short of satisfying the plaintiff's burden when it comes to a claim for willful or arbitrary denial of maintenance and cure.   "[A] seaman must do more than prove the employer's conduct was unreasonable." Manderson v. Chet Morrison Contractors, Inc., 666 F.3d 373, 383 (5th Cir. 2012)(citation omitted).

appropriate because the plaintiff cannot prove an essential element of his claim for failure to provide immediate and timely cure.

IV.

Finally, Aspen moves to strike the portion of the plaintiff's second amending complaint in which the plaintiff appears to attempt to assert claims against Aspen that were dismissed by this Court. The plaintiff counters that he simply copied and pasted the prayer from the previously filed complaints and it was not his intent to reassert claims that have been dismissed by this Court.

Insofar as the plaintiff's second amended complaint can be read as an attempt to reassert negligence and unseaworthiness claims against Aspen, striking such allegations from the second amended complaint is appropriate pursuant to Rule 12(f). There is no dispute that, on June 17, 2015, this Court granted in part Aspen's motion for summary judgment, dismissing the plaintiff's Jones Act negligence and general maritime law claims as alleged against Aspen. And, now that the Court has found it appropriate to grant the defendants' motions for partial summary judgment dismissing the plaintiff's claim for wrongful denial of timely cure, there are no longer any claims remaining against Aspen.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the plaintiff's motions for summary judgment are DENIED, the

defendants' motions for partial summary judgment are hereby GRANTED; and Aspen's motion to strike is hereby GRANTED.[8]

New Orleans, Louisiana, May 18, 2016

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[8] All claims against Aspen have now been dismissed.